**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARCIA A. ZUVICH,** | : | |
|    **Plaintiff** | : | |
|    v. | : | **CIVIL ACTION NO. 3:CV-07-796** |
| **MICHAEL J. ASTRUE,** | : | **(MUNLEY, D.J.)** |
| Commissioner of | | **(MANNION, M.J.)** |
| Social Security | : | |
|    **Defendant** | : | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits, ("DIB"), under Title II of the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433.

## I.   PROCEDURAL HISTORY.

The plaintiff protectively filed an application for DIB on January 18, 2006, alleging disability since December 15, 2005, due to mental impairments. (TR. 90, 96). The state agency denied her claim initially and she filed a timely request for a hearing. (TR. 50-54, 49). A hearing was held before an Administrative Law Judge, ("ALJ"), on September 21, 2006. (TR. 326-61). At the hearing, the plaintiff, represented by counsel, and a vocational expert, ("VE"), testified. (TR. 326-61). The plaintiff was denied benefits pursuant to the ALJ's decision of November 21, 2006. (TR. 32-42).

The plaintiff requested review of the ALJ's decision. (TR. 30-31). The Appeals Council denied her request on March 9, 2007, thereby making the ALJ's decision the final decision of the Commissioner. (TR. 4-6). 42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 8, 9 and 10).

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy"

2

> means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (2004). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520.

In the instant matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act. (TR. 35-42). At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity since the alleged disability onset date. (TR. 40). At step two, the ALJ concluded that the plaintiff's impairments of bipolar disorder and lumbar disc disease were "severe" within the meaning of the Regulations. (TR. 36). At step three, the ALJ found that the plaintiff's severe impairments were not severe enough, either singly or in combination, to meet or medically equal the criteria for establishing disability under the listed impairments as set forth in

3

Appendix 1, Subpart P, Regulations No. 4. (TR. 36-37).

At step four, the ALJ found that the plaintiff is unable to perform any of her past relevant work. (TR. 39, 41). The ALJ found at step five that the plaintiff has the residual functional capacity, ("RFC"), to perform light work with restrictions. (TR. 37-38, 41). The ALJ then determined that there are a significant number of jobs in the national economy that the plaintiff could perform. (TR. 40-41). Thus, the ALJ concluded that the plaintiff has not been under a disability, as defined in the Act, at any time through the date of the ALJ's decision. (TR. 41). *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV.   BACKGROUND.

The plaintiff was born on August 29, 1952 and was fifty-four (54) years old at the time of the ALJ's decision. (TR. 90, 328). The plaintiff has a high school education and past relevant work experience as a secretary. (TR. 328). At the time of the ALJ hearing, the plaintiff was working approximately fifteen hours a week at a job that she held for the previous seven months. (TR. 328-30, 332-33, 337). She did not think she could work full-time due to her insomnia and irregular sleep pattern. (TR. 338).

The plaintiff stated that she suffers from bipolar issues everyday. (TR. 342). She suffers from insomnia one to three days at a time. (TR. 342-43).

Vocational expert, Sheryl Bustin, testified based on the *Dictionary of Occupational Titles*. (TR. 350-60). In response to the ALJ's hypothetical questions, the vocational expert testified that the hypothetical individual would be capable of performing work as a companion, a cashier or a vending machine attendant. (TR. 357-58). The vocational expert also testified that most employers would not tolerate absences of one to two weeks at a time on a sustained basis, or one to two absences per week. (TR. 359). Additionally, the VE stated that most employers would not accept employees falling asleep

while working. (TR. 259-60).

## V. DISCUSSION.

### A. Whether the ALJ erred in determining the plaintiff's residual functional capacity.

The plaintiff argues that the ALJ erred in determining her residual functional capacity. (Doc. 8 at 11-16). Residual functional capacity refers to what a plaintiff can do despite her limitations. 20 C.F.R. § 404.1545(a). In determining the plaintiff's RFC, the ALJ must consider all relevant evidence, including the medical evidence of record and the plaintiff's subjective complaints. 20 C.F.R. § 404.1545(a). The final responsibility for determining a plaintiff's residual functional capacity is reserved for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 404.1527(e)(2), (3). At the hearing level, the responsibility for determining a plaintiff's residual functional capacity is reserved for the ALJ. 20 C.F.R. § 404.1546.

The ALJ determined that the plaintiff retains the residual functional capacity to lift and carry ten pounds frequently and twenty pounds occasionally, she is unlimited in her ability to stand, walk and sit, she can only perform low stress or moderate stress jobs, simple repetitive, one to two step tasks at a moderate pace, and she has moderate difficulty responding to pressures in a usual work setting and mild to moderate difficulty responding to changes in a routine work setting. (TR. 37-38, 41).

Specifically, the plaintiff argues that the ALJ erred by substituting his own lay opinion for that of the treating and examining specialists. (Doc. 8 at 11).

An ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing

observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991); *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). When the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason*, 994 F.2d at 1066). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408; *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

The plaintiff states that she began treating with psychiatrist Lyle L. Jobe, M.D., in 1997. (TR. 98). However, the plaintiff submitted notes entitled "Medication Supervision Report/Treatment Plan" from Dr. Jobe with dates beginning in 2004. (TR. 203-21). The defendant asserts that such reports do not establish that the plaintiff began treating with Dr. Jobe in 1997 and they do not establish any functional limitations. (Doc. 9 at 15).

On January 1, 2006, the plaintiff presented to the emergency room complaining of an inability to sleep for a two week period. (TR. 174). The plaintiff was evaluated and it was determined that she should be admitted for inpatient psychiatric treatment due to increasing depressive symptoms. (TR.

174). The plaintiff was admitted to the hospital on January 2, 2006. (TR. 165-68). She was diagnosed with bipolar disorder by history, high cholesterol and a Global Assessment of Functioning, ("GAF"), score of 35 was assessed.[1] (TR. 167). Upon discharge on January 6, 2006, the plaintiff's GAF score was 55[2] and she was referred to a partial program and Occupational and Vocational Rehabilitation, ("OVR"). (TR. 169-71).

In January and February 2006, Dr. Jobe noted that the plaintiff was doing well overall. (TR. 203-05).

On August 29, 2006, Dr. Jobe completed a Medical Source Statement of the plaintiff's Ability to Perform Work-Related Activities (Mental). (TR. 301-03). Dr. Jobe found that the plaintiff had moderate to extreme limitations in all areas of functioning.[3] (TR. 301-02). Dr. Jobe also noted that the plaintiff

---

[1] A GAF score between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric Association, 2000, ("DSM-IV-TR").

[2] A GAF score between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV-TR at 34.

[3] Specifically, Dr. Jobe found that the plaintiff had extreme limitations in the ability to understand and remember detailed instructions, carry out detailed instructions and respond appropriately to changes in a routine work setting. He found that the plaintiff had marked limitations in the ability to

suffers from unpredictable mood swings, depression and agitation which could severely limit her ability to handle stress. (TR. 302). Further, he noted that the plaintiff's restful sleep is unpredictable which can severely affect energy level and concentration. (TR. 302).

The ALJ accorded limited weight to Dr. Jobe's opinion. (TR. 38, 301-03). The ALJ stated that Dr. Jobe's opinion is not supported by clinical evidence, it is inconsistent with the plaintiff's functioning and there are no actual clinical notes from Dr. Jobe in the record. (TR. 38). The ALJ noted that the plaintiff continued to work part-time and she helped maintain her home. (TR. 38). The defendant states that Dr. Jobe's opinion is only supported by the plaintiff's unpredictable sleep patterns. (Doc. 9 at 13). However, as Dr. Jobe stated, he based his assessment on "[a] psychiatric evaluation including a thorough mental status examination, review of clinical and employment history as well as a concluding psychiatric diagnosis." (TR. 301). Dr. Jobe diagnosed bipolar disorder, NOS, and assessed a GAF score of 45.[4] (TR. 301).

In May 2006, the plaintiff underwent a consultative psychological evaluation with Stanley E. Schneider, Ed.D. (TR. 223-31). The plaintiff reported that she worked three days a week and was performing adequately

---

understand and remember short, simple instructions, carry out short, simple instructions, make judgments on simple work-related decisions, interact appropriately with the public and respond appropriately to work pressures in a usual work setting. Lastly, Dr. Jobe found that the plaintiff had moderate limitations in the ability to interact appropriately with supervisors and co-workers. (TR. 301-02).

[4] A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34.

at work because it was simple, low stress work. (TR. 224). Upon mental status examination, the plaintiff was depressed, she maintained eye contact, had no obvious anxiety, she exhibited no unusual mannerisms, tics or gestures, she was cooperative and tolerated the assessment. (TR. 226-27). The plaintiff's speech was good, her affect was low intensity, muted and constricted, she was of average intelligence, she was oriented to all spheres, she had no memory impairment, attention and concentration were slightly impaired, she had good insight and she reported recurrent suicidal thoughts. (TR. 226-28). The plaintiff also reported verbal and physical hostility towards others. (TR. 227).

Dr. Schneider noted that the plaintiff was hospitalized on two occasions for her psychiatric impairments, once in 1996 and once in 2006. (TR. 224). Dr. Schneider diagnosed bipolar disorder, mixed, chronic anxiety, depression and panic disorder without agoraphobia. (TR. 228).

The ALJ accepted part of Dr. Schneider's opinion and rejected part of his opinion. (TR. 39). The ALJ accorded limited weight to Dr. Schneider's opinion that the plaintiff has marked limitations in her ability to interact appropriately with the public, marked limitations in her ability to respond appropriately to work pressures in a usual work setting, and extreme limitations in the ability to respond appropriately to changes in a routine work setting. (TR. 301-02).

On May 24, 2006, Richard W. Williams, Ph.D., reviewed the medical evidence and completed a Mental RFC Assessment and a Psychiatric Review Technique Form. (TR. 232-47). On the Mental RFC Assessment, Dr. Williams found that the plaintiff was moderately limited in a few areas of functioning, and not significantly limited in most areas of functioning. (TR. 232-33).

On the Psychiatric Review Technique Form, Dr. Williams evaluated the

9

plaintiff's impairments pursuant to Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders). (TR. 235). Dr. Williams ultimately concluded that the plaintiff "appears capable of performing at least simple, repetitive work in a low stress environment." (TR. 247).

The ALJ accorded great weight to many of Dr. Williams' findings, however the ALJ accorded limited weight to Dr. Williams' opinion that the plaintiff has moderate limitations in social functioning. (TR. 38). The ALJ stated that the plaintiff has some friends, and has a "decent" relationship with her husband and mother, although she has a strained relationship with her daughter. (TR. 38). However, the plaintiff's testimony does not portray a decent relationship with her husband. She testified that she experiences a lot of stress at home, her husband drinks alcohol often and they have marital problems. (TR. 349). She stated that she has not divorced her husband because she cannot financially afford to do so. (TR. 349-50).

The ALJ also accorded limited weight to Dr. Williams' opinion that the plaintiff is moderately limited in her ability to complete a normal workday or work week without interruptions from her impairments and to perform at a consistent pace without an unreasonable number and length of rests. (TR. 38). The ALJ stated that the record does not establish such findings. (TR. 38-39). However, the plaintiff reported "extreme absenteeism" at her last job due to her sleep problems and bipolar disorder. (TR. 343). She missed work two to three weeks at a time. (TR. 343). The plaintiff is able to perform part-time work, consisting of working only three to four hours per day, because the schedule is more accommodating to her impairments. (TR. 344).

The ALJ accorded great weight to Dr. Williams' conclusory statement in his May 2006 Mental RFC Assessment. (TR. 39, 234). Dr. Williams stated that the medical evidence establishes that the plaintiff suffers from bipolar disorder, depression, anxiety and insomnia. (TR. 234). However, Dr.

Williams stated that there are no restrictions on the plaintiff's abilities of social interaction and he found the plaintiff only partially credible. (TR. 234). He determined that the plaintiff "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." (TR. 234). The ALJ stated that these findings were consistent with his residual functional capacity assessment and the record overall. (TR. 38-39).

Dr. Williams based his findings on a review of the medical evidence. Dr. Williams never examined the plaintiff. The ALJ does not demonstrate how the one-time assessments of Dr. Williams and Dr. Schneider are based on greater clinical findings than Dr. Jobe's opinion. *See Wier v. Heckler*, 734 F.2d 955, 963 (3d Cir. 1984) (The opinions of doctors who never examined the claimant had "less probative force, as a general matter, than they would if they had treated or examined" the claimant) (citing *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). The ALJ failed to demonstrate how the opinion of the plaintiff's treating physician, Dr. Jobe, is entitled to less weight than the other medical evidence of record. As stated above, Dr. Jobe found that the plaintiff suffers from moderate to extreme limitations in all areas of functioning, that the plaintiff's unpredictable mood swings, depression and agitation could severely limit her ability to handle stress and her unpredictable restful sleep can severely affect energy level and concentration. (TR. 301-02).

Based on the foregoing, there is a significant basis for a determination that the ALJ erred in determining the plaintiff's residual functional capacity.

### B. Whether the ALJ erred by failing to address all the evidence of record.

The plaintiff's next argument is that the ALJ failed to address all the evidence in the record. (Doc. 8 at 17-19). The plaintiff states that the ALJ

failed to consider the disability function report completed by her sister, Karin Tyler, regarding the plaintiff's sleep and cycling difficulties. (Doc. 8 at 17); (TR. 105-12). The defendant states that the form completed by the plaintiff's sister is cumulative of the other evidence in the record. The defendant also notes that the ALJ did not reject the plaintiff's sister's statement. (Doc. 9 at 22). Rather, the ALJ found that the plaintiff suffers from problems with concentration and stress, consistent with the plaintiff's sister's statement. (Doc. 9 at 22).

Ms. Tyler completed a Disability Function Report on March 18, 2006. (TR. 105-12). Ms. Tyler noted that the plaintiff's illness affects her sleep and has caused several sleepless nights. (TR. 106). Ms. Tyler also noted that lack of sleep affects the plaintiff's ability to remember to take care of her own personal needs. (TR. 107). She also reported that the plaintiff has problems with memory, completing tasks, concentration, understanding, following instructions and getting along with others. (TR. 110). Ms. Tyler noted that the plaintiff does not handle stress well and does not handle changes in routine well. (TR. 111).

The ALJ did not mention Ms. Tyler's opinion. The ALJ should have at least discussed Ms. Tyler's disability form and the weight afforded to the evidence. The ALJ erred by not addressing the lay witness evidence regarding the plaintiff's sleep and cycling difficulties. *See Burnett v. Comm. of SSA*, 220 F.3d 112, 126 (3d Cir. 2000). As the Court in *Burnett*, stated, while the ALJ is permitted to weigh the credibility of the evidence, she is required to give some indication of the evidence which she rejects, as well as the reasons for discounting the evidence. *Burnett*, 220 F.3d at 121.

Further, the *Burnett* Court stated, "[s]imilar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him. Although allegations of pain and other subjective symptoms must be

consistent with objective medical evidence, the ALJ must still explain why he is rejecting the testimony." *Burnett*, 220 F.3d at 122 (internal citations omitted). Ms. Tyler's disability report corroborates the plaintiff's testimony and supports her credibility. Therefore, we recommend remanded for the ALJ to address the lay witness, non-medical evidence regarding the plaintiff's disability.

## VI.   RECOMMENDATION.

Based on the foregoing, it is recommended that the plaintiff's appeal be **GRANTED** and that the case be remanded for further proceedings consistent with this report.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated: June 4, 2008**
O:\shared\REPORTS\2007 Reports\07-0796.01.hhs.wpd