IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCIA ANNE ZUVICH, | : | No. 3:07cv796 |
| Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |
| Defendant | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Before the court are defendant's objections (Doc. 12) to Magistrate Judge Malachy E. Mannion's Report and Recommendation (Doc. 11) in this social security disability case, which proposes that we remand the case to the Administrative Law Judge (ALJ) for reconsideration. The matter has been fully briefed and is ripe for disposition.

**Background**

This case concerns Plaintiff Marcia A. Zuvich's appeal of the Defendant Commissioner of Social Security's decision to deny her disability benefits. Plaintiff initially filed an application for disability insurance benefits with the Social Security Administration on January 18, 2006. (See Record (hereinafter "R.") at 90). Plaintiff's claim contended that she suffered from bipolar disorder and depression. (Id. at 95). She had been unable to work because of her illness since December 2005, when she became mentally unable to "handle" her responsibilities. (Id. at 96). Since

2001, however, plaintiff reported that she could only work on "short term assignments" because of difficulties concentrating and anxiety. (Id.). Her continuation had deteriorated since that time. (Id.). Plaintiff's application also included medical records from the various doctors who treated her for her conditions. A state agency denied plaintiff's initial claim for benefits on June 7, 2006. (Id. at 50-54). Plaintiff then timely filed a request for a hearing before an ALJ. Id. at 49. That hearing took place on September 21, 2006. (Id. at 326-61). An attorney represented plaintiff at that hearing, and a vocational expert testified. (Id.).

At the hearing on plaintiff's request for benefits, the evidence established that plaintiff was born on August 29, 1952. (Id. at 328). Plaintiff had a high school education and work experience as a secretary. (Id.). At the time of the hearing, plaintiff was working about fifteen hours a week. (Id.). She testified that in recent years she had worked in a number of different jobs. (Id. at 336). She found that she could not work a full-time job, since the stress associated with a forty-hour week would cause insomnia and eventually a "bipolar cycle." (Id.). Currently, she could work no more than her current fifteen hours a week. (Id. at 337). Plaintiff testified that if she worked at a full-time job, she would have a tendency to get overwhelmed and confused, ending up "very nervous about it, very stressed about it." (Id. at 341). Feeling that way made her "panicky . . . my mind gets really jumbled and I can't sort things out." (Id. at 342).

Plaintiff also testified that her bipolar disorder and her inability to sleep were

2

related.  (Id. at 342-343).  Plaintiff could have "manic attacks where I have increased energy, I'm not able to sleep at night."  (Id. at 343).  Plaintiff's disorder had frequently caused her to miss work at previous jobs, sometimes for two or three weeks at a time.  (Id.).  At times, plaintiff's disorder could overwhelm her, leading to "anxiety, depression" and a desire to do nothing.  (Id. at 346).  Plaintiff on those occasions found it "very hard . . . to be around people, let alone my family."  (Id.).  Plaintiff had twice been hospitalized for her condition.  (Id.).  The previous January, plaintiff had been admitted to the hospital after her bipolar disorder triggered insomnia that prevented her from sleeping for four days.  (Id. at 348).

Plaintiff's condition had also taken a toll on her family and social life.  She found things with her husband "extremely difficult."  (Id. at 346).  Plaintiff's husband drank too much and too frequently.  (Id. at 349).  Plaintiff, herself a recovering alcoholic, tried to discuss the issue with her husband, but found that she could not convince him to quit drinking.  (Id.).  Though plaintiff acknowledged that she might be best off leaving the marriage, she was "in no way financially capable of leaving that situation and fully striking out on [her] own."  (Id.).  Plaintiff's relationship with her children had been damaged by "my mood swings, my outbursts, my patience, you know, why am I always in a bad mood."  (Id. at 347).  Such difficulties would only become worse if plaintiff had to deal with the public on a full-time basis: "I would become very short tempered," she testified.  (Id.).

Sheryl Bustin, a vocational expert, also testified at the hearing.  The ALJ, after

listening to a description of plaintiff's past work and work skills provided by the vocational expert, posed to her a hypothetical question based on his assessment of plaintiff's condition. (Id. at 356). The ALJ described his hypothetical claimant as a person with impairments that limited her to "light work; eight hours of standing, walking, sitting; 10 pounds frequently, 20 pounds lifting and carrying . . . simple repetitive, one and two-step jobs" and "moderate difficulty in responding appropriately to work pressures in the usual work setting and . . . mild to moderate difficulty responding appropriately to changes of a routine work setting." (Id. at 256). The hypothetical claimant was also "limited to jobs involving no more than a low to moderate stress level and would be limited to perform no more than at a moderate pace." (Id.). The ALJ first asked if such a person could perform any of plaintiff's past work. (Id.). The vocational expert gave an equivocal answer to that question.[1] (Id. at 357). When asked whether any jobs existed which the hypothetical claimant could perform, the vocational expert found that plaintiff could find work as a "companion" for a lonely elderly person, a cashier or a person who refills vending machines. (Id. at 157-58). Under examination from plaintiff's attorney, however, the expert admitted that plaintiff's frequent absences would make it difficult for her to

---

[1] The vocational expert answered that: "I think that–you know, that home care which she started briefly I think she could do that. She didn't work very long, but home care would–well, we're talking about light work because that could have been heavy. No. Excuse me. Not that one. I'm trying to think of the–stress. And the server in the cafeteria, that was considered light and the secretary receptionist, depending on the work setting, could be low to moderate stress. I have work pressures . . . It depends on the work setting so that's why it's hard for me to say that." (R. at 157). The ALJ did not ask for any clarification.

4

maintain those jobs.  (Id. at 359).  Employers would also be unlikely to tolerate the sleepiness and absences associated with plaintiff's insomnia.  (Id. at 360).

Administrative Law Judge David A. Gerard issued his opinion on November 21, 2006.  (See R. at 35-42).  The ALJ found that plaintiff was not disabled within the meaning of the Social Security Act.  (Id. at 35).  Though the ALJ found that plaintiff suffered from bipolar disorder and faced "mild limitations in her activities of daily living and social functioning, and moderate limitations in concentration, persistence, and pace," he also concluded that plaintiff "retained some ability to function."  (Id. at 36-37).  Accordingly, the court found that plaintiff had the residual functional capacity necessary to perform her past relevant work or work existing in significant numbers in the national economy.  (Id. at 37).

The ALJ reported that he assigned "limited weight" to the opinion of Dr. Lyle Jobe, plaintiff's treating psychiatrist.  (Id. at 38).  Dr. Jobe provided "some support for [his] opinions," he did not provide clinical notes to which the ALJ could compare his assessment.  (Id.).  Additionally, Dr. Jobe's assessment of disability was inconsistent with plaintiff's claims that she could work on a part-time basis, despite her bipolar disorder.  (Id.).  The ALJ also assigned limited weight to the opinions of other examining physicians, who had concluded that plaintiff had limitations on her ability to function socially.  (Id. at 38-39).  He noted that plaintiff had testified that she had "a decent relationship with her husband and mother."  (Id. at 38).  Though plaintiff had a "strained" relationship with her daughter, such difficulties were normal for

5

parents with teenagers. (Id.). As a result of these findings, the ALJ concluded that plaintif was not disabled and not entitled to disability benefits. (Id. at 41-42).

Plaintiff challenged this determination, but the Social Security Appeals council denied her appeal. (Id. at 4-6). Plaintiff then filed the instant action (Doc. 1). After plaintiff filed her complaint, Magistrate Judge Mannion reviewed the ALJ's decision (Doc. 11). In an opinion issued June 4, 2008, Magistrate Judge Mannion found that the ALJ had erred in two respects, and recommended remand. He concluded that the ALJ did not adequately explain why he gave limited weight to the medical opinion of Dr. Jobe and did not explain his consideration of the opinions of plaintiff's other doctors. He also found that the ALJ had erred in failing to consider the testimony of plaintiff's sister on her limitations. Because the ALJ had not adequately weighed the evidence, Magistrate Judge Mannion recommended that the case be remanded to the AJL to consider that additional evidence.

The Commission filed objections to the Magistrate Judge's report and recommendation (Doc. 12) and both parties briefed their positions, bringing the case to its present posture.

**Jurisdiction**

We have jurisdiction over the instant action pursuant to 42 U.S.C. § 405 (g).[2]

---

[2]"Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district

6

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

The Social Security Act defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to perform in the workplace. In order to receive disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

---

court of the United States for the judicial district in which the plaintiff resides, or has the principal place of business." 42 U.S.C. § 405(g).

U.S.C. § 423(d)(1)(A).  The Act further provides that a person must "not only [be] unable to do this previous work but [must be unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 459-60 (1983).

In analyzing disability claims, the Commissioner employs a five-step sequential evaluation.  20 C.F.R. § 416.920.  The initial three steps are as follows: 1) whether the applicant is engaged in substantial gainful activity; 2) whether the applicant has a severe impairment; 3) whether the applicant's impairment meets or equals an impairment listed by the Secretary of Health and Human Services as creating a presumption of disability.  If claimant's impairment does not meet requirement 3, the claimant must demonstrate 4) that the impairment prevents him from doing past relevant work. See 20 C.F.R. §§ 404.1520, 416.920.  If the applicant establishes steps one through four, then the burden is on the Commissioner to demonstrate the final step:  5) that jobs exist in the national economy that the claimant can perform.  Jesurum v. Secretary of the U.S. Dept. of Health and Human Services, 48 F. 3d 114, 117 (3d Cir. 1995).

**Defendant's Objections**

The Commissioner raises two objections to the report and recommendation.

8

We will address each in turn.

### A. The Magistrate Judge's Finding that the ALJ Erred in Not Giving Proper Weight to Dr. Jobe's Opinion

The Commissioner argues that the magistrate judge erred in finding that the ALJ had not given sufficient weight to the opinion of plaintiff's treating psychiatrist, Dr. Lyle Jobe. The Commissioner contends that, contrary to the Magistrate Judge's opinion, the ALJ did address why he gave limited weight to Dr. Jobe's opinion, and cited Social Security regulations in doing so. Moreover, the Commissioner contends, the ALJ as the trier-of-fact has the responsibility of determining what weight to give the evidence in question and to resolve conflicting medical opinions. He had discretion to determine which parts of the medical evidence were credible and which were not. As the reviewing court, the magistrate judge must defer to such findings. Accordingly, the Commissioner argues that the court must reject the report and recommendation on this point.

The magistrate judge surveyed the medical evidence and concluded that the ALJ gave too much weight to the opinion of medical experts who had never examined the plaintiff and too little credit to the opinion of her treating physician, who had concluded that she suffered serious deficiencies in functioning. This failure to afford sufficient weight to the treating physician's opinion, the magistrate judge concluded, offered a significant basis for determining that the ALJ erred in assessing plaintiff's residual functional capacity. The magistrate judge therefore recommended

that the court return the case to the ALJ for proper consideration of Dr. Jobe's opinion.

Dr. Jobe, who plaintiff had identified as her treating psychiatrist, completed a medical source evaluation of ability to do work-related activities (mental) for the plaintiff on August 28, 2006. (R. at 301). He reported that plaintiff's impairment affected her ability to "understand, remember, and carry out instructions affected by the impairment" (Id.). Plaintiff also had "marked" limitations in her ability to "understand and remember" and "carry out" "short, simple instructions." (Id.). She faced a similar limitation in her "ability to make judgments on simple work-related decisions." (Id.). Plaintiff's illness left her extremely limited in her ability to understand and remember detailed instructions, as well as to carry them out. (Id.). Dr. Jobe reported that he had conducted a "psychiatric evaluation including a thorough mental status examination, review of clinical and employment history as well as a concluding psychiatric diagnosis" in coming to his opinion. (Id.). He reported that plaintiff's current diagnosis was for "Bipolar Disorder Not Otherwise Specified" and assigned her a GAF score of 45.[3] Dr. Jobe also reported that plaintiff suffered from moderate to extreme difficulties in her ability to interact with others. (Id. at 302). Her difficulties were marked in the areas of interacting with the public

---

[3]This GAF score, an assessment of a patient's ability to function means that the patient exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, Fourth Ed., Text Revision at 34.

10

and responding to the pressures of work, and extreme in her ability to adjust to routine changes in the work environment. (Id.). Dr. Jobe also noted that plaintiff was prone to "unpredictable mood changes which can severely limit your ability to handle stress" and her frequent difficulty sleeping meant that her "energy level and concentration can be severely affected. (Id.).

The ALJ gave more credit to portions of two other medical opinions, both of them supplied by doctors employed by the State of Pennsylvania to make disability determinations. The first, Dr. Stanley Schneider examined plaintiff on May 9, 2006. (R. at 223-231). After examining plaintiff and finding that she suffered from bipolar disorder, mixed type with chronic anxiety and depression, Dr. Schneider completed a form to evaluate her capacities. (Id. at 228). He concluded plaintiff faced slight difficulty in understanding, remembering and carrying out short, simple instructions, more substantial limitations with more complex instructions, and marked difficulty in functioning in stressful, changing situations. (Id. at 229).

Dr. Richard W. Williams reviewed plaintiff's medical records and on May 24, 2006 issued a mental residual functional capacity assessment. (Id. at 232). Contrary to the opinions of the medical experts who actually examined the plaintiff, Dr. Williams concluded that plaintiff had no more than moderate limitations on her ability to perform workplace tasks. (Id. at 232-233). Dr. Williams found no significant limitations on plaintiff's ability to interact socially, and concluded that plaintiff could perform "at least simple, repetitive type work in a low stress

11

environment." (Id at 233, 248). Dr. Williams did find, however, that plaintiff had moderate limitations in maintaining social functioning and maintaining concentration, persistence and pace. (Id. at 245). The ALJ credited the portions of the doctors' reports that found few limitations for the plaintiff and rejected those portions that found her condition more severe. (Id. at 38-39).

The court agrees with the magistrate judge that the ALJ did not properly credit the opinion of Dr. Jobe that plaintiff suffered from a condition that severely limited her ability to function in a variety of areas of work and created unpredictable mood swings, depression, anxiety and an inability to concentrate. This opinion came from plaintiff's treating physician, not a physician employed by the state as part of the disability determination process. "Opinions by physicians who have neither examined nor treated a patient 'have less probative force, as a general matter, then they would have if they had treated or examined him.'" Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996) (quoting Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)). Indeed, "[i]n the context of social security disability cases . . . we afford *greater weight* to a treating physician's opinion." Id. at 782-83. Here, the ALJ discounted Dr. Jobe's opinion and substituted portions of Dr. Williams's opinion that counseled against plaintiff's claim, even though Dr. Jobe was the treating physician. When considered in light of the ALJ's failure to discuss extensively other medical evidence in the record, which included reports on her mental health treatment and hospitalization related to that condition and treatment

12

notes from Dr. Jobe and other doctors, the court concludes that the ALJ erred in not assigning proper weight to Dr. Jobe's opinion. The court will adopt the recommendation that the case be remanded to the ALJ to consider all of the medical evidence contained in the record and give proper weight to the treating physician's assessment.

**B. The Magistrate Judge's Finding that the ALJ Improperly Failed to Consider the Testimony of Plaintiff's Sister**

The magistrate judge concluded that the ALJ improperly ignored evidence on the record that would support plaintiff's claim. Specifically, he noted that the ALJ ignored a disability function report completed by plaintiff's sister, Karin Tyler. In that report, Tyler described plaintiff as frequently troubled by a lack of sleep brought on by her mental illness. (R. at 107). She had observed a general decline in her sister, who during periods of illness exhibited "no desire to shower/bathe, care for [her] hair, shave her legs or wear makeup." (Id. at 106). She also had little desire to eat during those periods. (Id.). Plaintiff had previously been able to prepare meals for her family, but now was unable to follow the directions in a recipe because "[i]t is too stressful and confusing for her to do these multiple step procedures." (Id.). She had become unable to pay the household bills without being supervised by her husband. (Id. at 108). She also had become much less competent in handling money: "on a bad day" she found "counting change–addition/subtraction too overwhelming." (Id. at 109). Plaintiff also had difficulty concentrating enough to enjoy the movies, magazine articles, novels and scrapbooking which she used to appreciate. (Id.).

13

Plaintiff had also limited her participation in social activities. (Id. at 109-10). At times, plaintiff agreed to go to a movie or shopping, but then refused to get out of the car when they arrived at their destination. (Id. at 110). Plaintiff also experienced a declining ability to listen to instruction, follow directions and handle stressful situations. (Id. at 110-111). Because this testimony corroborated the testimony of plaintiff's psychiatrist about her limitations, the ALJ should have discussed his reasons for rejecting the document. The magistrate judge recommended that the case be remanded so the ALJ could do so.

The Commissioner argues that the ALJ should not have been required to address the plaintiff's sister's statement because it was merely cumulative of plaintiff's and the doctor's claim of her disability. Explicitly acknowledging that statement would not have changed the outcome of the decision. Remanding the case to consider this statement would not amount to a finding that the ALJ's decision was not supported by substantial evidence, but would instead by an attempt to "re-weigh" the evidence and reach a conclusion different from that of the ALJ. Such action is not permitted under the law, and the court should reject the opinion of the magistrate judge.

The court will adopt the magistrate judge's opinion on this point. In assessing the evidence, an ALJ must "set forth the reasons for his decision." Burnett v Commissioner of Social Security Admin., 220 F.3d 112, 119 (3d Cir. 2000). Further, "the ALJ must also consider and weigh all of the non-medical evidence before him."

14

Id. at 122.  If an ALJ chooses to reject non-medical testimony that supports a plaintiff's disability claim, the ALJ "must still explain why he is rejecting the testimony."  Id.; see also Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) (finding that "we need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.  In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").  The ALJ failed to do so here.  Contrary to the Commissioner's assertions, plaintiff's sister's statement is not merely cumulative of her doctor's opinion and her own testimony, especially since the ALJ declined to credit Dr. Jobe's finding that plaintiff suffered from a debilitating condition.  Instead, adding plaintiff's sister's evidence to that provided by the plaintiff and her treating physician could very well have led to another opinion on the severity of plaintiff's illness and her eligibility for benefits.  Accordingly, the court will adopt the report and recommendation on this point as well and order remand to the ALJ for a reconsideration consistent with this opinion.  On remand, the ALJ should collect new evidence from the plaintiff which documents the current state of her medical condition.

**Conclusion**

   The court will overrule the Commissioner's objections and adopt the report and recommendation.  The case will be remanded to the Commissioner for proceedings consistent with this opinion.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCIA A. ZUVICH,** | : | No. 3:07cv796 |
| **Plaintiff,** | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| **Commissioner of Social Security** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 23rd day of September 2008:

1) The report and recommendation of Magistrate Judge Mannion (Doc. 11) is hereby **ADOPTED;**

2) The defendant's objections to the report and recommendation (Doc. 12) are **OVERRULED**; and

3) This Clerk of Court is directed to remand the case to the Commissioner for proceedings consistent with this opinion.

                                             **BY THE COURT:**

                                             **s/ James M. Munley**
                                             **JUDGE JAMES M. MUNLEY**
                                             **United States District Court**